## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                             No. CR 05-801 JB

ERNEST FRED,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant Ernest Fred's Motion to Compel Defense Interview of Witnesses, filed November 15, 2006 (Doc. 93)("Motion to Compel Interview"). The Court held a hearing on this motion on November 27, 2006, and heard additional testimony on the motion on November 28, 2006 and December 4, 2006.  The primary issue is whether the Court should compel the United States' witnesses to be interviewed by Fred because the witnesses allegedly told Fred's investigator that the United States' case agent told them not to talk to the defense. Because the United States' case agent has sworn, under oath, that he did not so instruct the witnesses, and because Fred's investigator and the United States' witness have offered testimony consistent with the case agent's affirmations, the Court will deny the motion.

## PROCEDURAL BACKGROUND

The case agent in this case, Federal Bureau of Investigation Special Agent Devon Mahoney, represents that it is his standard practice to tell victims and their families that, although they are not required to speak to the Defendant's representatives, it is within their rights to speak to defense representatives and that he cannot have any input on their decision whether to do so. See Transcript

of Hearing at 28:23 - 29:2 (Mahoney)(taken November 28, 2006)("November 28 Transcript").[1]
Mahoney also represents that he informs victims and their families that, if they wish, the Assistant
United States Attorney prosecuting the case may be present during the interview with defense
representatives.  See id. at 29:3-5.  Mahoney states that, in his experience, victims typically do not
wish to speak to defense representatives.  See id. at 29:6-9.  Finally, Mahoney contends that he
informed the alleged victim in this case, Natisha F.,[2] and her guardians of their rights consistent with
his standard practice.  See id. at 32:14-18.

       To assist in preparing his defense in this matter, Fred hired a private investigator, Milton
Rodriguez, and requested that Rodriguez attempt to locate and interview Natisha.  See November
28 Transcript at 6:7-10 (Rodriguez).  Rodriguez obtained an address for Natisha's guardians, Judge
Hudson and Richelle Hubbell, in Phoenix, Arizona, from Fred's counsel's office and went to Phoenix
to seek an interview with Natisha on November 10, 2006.  See id. at 6:13-17.  November 10, 2006
was a federal holiday, Veteran's Day.  Rodriguez drove to Phoenix in his personal vehicle, a 2002
Nissan Frontier pickup truck.  See id. at 6:21-23.

       The address that Rodriguez had identified as belonging to Hudson and Hubbell was located
in a gated community.  See id. at 7:10-11.  Rodriguez had not called ahead to schedule an

_____

       [1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original,
unedited version.  Any final transcript may contain slightly different page and/or line numbers.

       [2]In the briefing associated with this motion, both parties referred to the alleged victim by the
name "Natisha."  The parties have consistently used this name in all of their pre-trial pleadings.  At
the November 27, 2006 motion hearing, however, the United States' counsel represented that the
alleged victim now prefers the name "Adrianne," and that Adrianne is the name the United States will
use to refer to her at trial.  See Transcript of Hearing at 11:17-22 (Nayback)(taken November 27,
2002).  To be consistent with the briefing on this motion, the Court will refer to the alleged victim
as Natisha in this Memorandum Opinion and Order.

appointment, because he did not have a telephone number for either the guardians. See id. at 16:1-3. As Rodriguez was reviewing his notes outside the gated community, he noted a Ford pickup truck with New Mexico license plates at the entrance to the community; Rodriguez pulled into the community behind the Ford pickup and followed the vehicle to a residence at the address that Rodriguez was attempting to locate. See id. at 7:18-22. Rodriguez approached the passengers in the pickup truck and asked if they were Hudson and Hubbell. See id. at 7:24 - 8:3. They indicated that they were not Hudson and Hubbell and directed him to the residence. See id. at 8:2-4.

Rodriguez knocked on the door, and explained to a young boy that answered the door that he wished to speak to Natisha. See id. at 8:6-7; 12:25 - 13:1. The young boy asked Rodriguez to wait at the door and returned into the house. See id. at 8:8. Within a few moments, Hubbell came to the door and inquired why Rodriguez had come to the residence. See id. at 8:8-11.

Rodriguez initially identified himself verbally, explained that he was working for Fred's counsel, and requested an interview with Natisha. See id. 8:13-16; 20:16-23. At Hubbell's request to see Rodriguez' identification, Rodriguez produced his state-issued private investigator's license. See id. at 8:18-20. Hubbell then stated to Rodriguez that she could not let him interview Natisha. See id. at 8:21-22.

Hubbell indicated that she wished to verify Rodriguez' identification, and that she had to "clear it with [Federal Bureau of Investigation Special Agent Devon] Agent Mahoney" before she could allow Rodriguez to interview Natisha and went inside the residence to call Mahoney. Id. at 10:22-24. See Transcript of Hearing at 7:8-23 (Hubbell)(taken December 4, 2006)("December 4 Transcript"). A few moments later, Hubbell returned to the front door accompanied by Hudson, and told Rodriguez that she had been unable to reach Mahoney. See id. at 11:12-17 (Rodriguez).

-3-

Hubbell reaffirmed that she could not let Rodriguez interview Natisha "until she had clearance from Agent Mahoney." Id. at 12:2-4; 17:24 - 18:9. Rodriguez understood that it was Hubbell's right not to speak with him and not to permit him to speak with Natisha. See id. at 23:3-4.

At Rodriguez' request, Hubbell provided him with Mahoney's office and cellular telephone numbers. See id. at 12:14-16. Due to Rodriguez' hearing difficulties, Hubbell was required to repeat each of the telephone numbers several times. See December 4 Transcript at 13:13-19 (Hubbell). Rodriguez gave his business card to Hubbell, and asked her to call him if Mahoney returned her call within an hour; Hubbell agreed to do so. See id. at 12:18-23 (Rodriguez). Rodriguez left the residence at approximately 2:30 p.m. See id. at 12:25 - 13:1.

Rodriguez waited an hour, during which time he called Fred's counsel to apprize him of the circumstances, and left a voicemail message for Mahoney explaining who he was and what is was that he was attempting to do. See id. at 13:9-12. At the conclusion of the hour, he telephoned Hubbell, who represented to him that she had not heard from Mahoney. See id. at 13:12-14. During that telephone conversation, Hubbell again denied Rodriguez' request for permission to meet with Natisha and stated that she would not permit the interview until Mahoney told her that it would be alright to do so. See id. at 13:14-17. At no time during the exchange between Rodriguez and Hubbell, did Hubbell indicate that she was personally opposed to Rodriguez interviewing Natisha. See id. at 13:18-21. Rodriguez did not tape-record any portion of either of his conversations with Hubbell. See id. at 24:1-15.

Fred represents that, on November 10, 2006, after the deadline for pre-trial motions had passed and after the Court had ruled on pre-trial motions, his investigator contacted Hubbell and Hudson to seek an interview with them and with Natisha. See Motion to Compel Interview ¶ 4, at

1.  Fred states that Hubbell informed his investigator, on two separate occasions, that neither the guardians nor Natisha was permitted to talk to the defense and that, if anyone attempted to contact them, they were asked to contact the case agent before allowing anyone to speak with Natishia.  See id. ¶ 5, at 2.  The guardians identified the case agent, Mahoney, as the person who had informed them and Natisha not to speak to anyone but him about the case.  See id. ¶ 6, at 2.  Fred's attorney represents that he has had other cases with Mahoney, in which the prosecution witnesses told the defendant's representative that Mahoney had given virtually the same instructions to the witnesses.  See id. ¶ 9, at 2.  Fred's attorney states that the defendants in the other cases suffered material prejudice from Mahoney's conduct.  See id.

Fred, through his Court-appointed attorney and pursuant to the Rules of Criminal Procedure, moves the Court to compel defense interviews of witnesses.  Implicit in the motion is also a request for leave of court to file this motion after the pre-trial motion deadline for this proceeding has passed.  See id. ¶ 1, at 1.  Fred states that the alternatives regarding the imputed prosecutorial abuse are: (i) the Court should dismiss the case with prejudice; (ii) the Court should not permit the witnesses to testify; and (iii) the Court should permit the defense to have a full interview of each of the prosecution's three witnesses.  See id. ¶ 11, at 2.

Fred suggests that the most reasonable approach to protect Fred's right to a fair trial, and at the same time not force the Court to reset the December 4, 2006 trial date, is for the Court to authorize interviews pursuant to the Court's right to exercise its discretion in the interests of justice.  See id. ¶ 12, at 3.  Fred's counsel, however, is out of state from November 17-26, 2006, so, Fred urges, the Court must expeditiously schedule the interviews to avoid delaying trial.  See id. ¶ 13, at 3.  Fred maintains that, if the Court cannot reasonably schedule this interview, then the next

alternative is to re-set the trial.  See id. ¶ 14, at 3.  Fred admits that no party welcomes this option, but notes that this alternative is less severe than the other alternatives he suggests are necessary to preserve the interests of justice.  See id.  The United States characterizes Fred's reference to a possible continuance as "consistent with the defendant's repeated attempts to avoid trial," and represents that it will oppose any further continuance in this matter.  United States' Response to Defendant's Motion to Compel Defense Interview of Witnesses ¶ 4, at 2, filed November 16, 2006 (Doc. 95)("United States' Response").

Fred represents that he has not filed four separate motions to more explicitly preserve the particular grounds and options he sets forth in his motion, because of his respect for opposing counsel's facility, experience, and understanding of these issues, because of the Court's competence, and in the interests of time in raising these urgent issues.  See Motion to Compel Interview ¶ 15, at 3.  The prosecution, through Assistant United States Attorney Kyle Nayback, opposes leave of court to file this motion, also opposes the remedies that Fred suggests, and otherwise opposes the motion in all respects.  See id. ¶ 16, at 3; United States' Response.

The Court held a hearing on this matter and, at that hearing, the case agent denied making the statements attributed to him and set forth in detail his alleged statement to the guardians.

### LAW REGARDING WITNESS INTERVIEWS

As a general rule of criminal law, witnesses belong "neither to the government nor the defense[, and b]oth sides have a right to interview witnesses before trial.  See United States v. Carrigan, 804 F.2d 599, 603 (10th Cir. 1986)(quoting United States v. Cook, 608 F.2d 1175, 1180 (9th Cir. 1979)(internal citations omitted)).  Nevertheless, "[a] witness in a criminal case has the right to refuse to be interviewed," and a defendant's rights are not violated when a witnesses decides not

to talk.  United States v. Pinto, 755 F.2d 150, 152 (10th Cir. 1985).  The witness' decision must be their own -- the prosecutor must not obstruct communications between witnesses and defense counsel -- and "it is unprofessional conduct for the prosecutor to advise a prospective witness to decline to give the defense information that person has a right to give."  United States v. Carrigan, 804 F.2d at 603 (citing Model Rules of Prof'l Conduct R. 3.4(f) (2003)("A lawyer shall not . . . request a person other than a client to refrain from voluntarily giving relevant information to another party. . . .")).  Finally, the United States Court of Appeals for the Tenth Circuit has held that where a prosecutor's interference with a defendant's access to witnesses is significant, a district court has the authority to order the taking of adverse witnesses' depositions, because "[a]n order merely to cease such interference, after the fact, might be insufficient because the witnesses' free choice might have been already perverted and the witnesses likely to refuse voluntary interviews."  United States v. Carrigan, 804 F.2d at 603-04.

## ANALYSIS

Fred has shown good cause for the Court to grant him leave to file this motion.  The Court believes that it is important to resolve the issues Fred raises in order to ensure Fred's right to a fair trial and will therefore consider the motion on its merits.

Fred alleges that the refusal of witnesses to speak with defense investigators upon Mahoney's instructions are an enormous inconvenience and a significant expense to defense counsel, his investigator, Fred, the Court, and even the United States.  See Motion to Compel Interview ¶ 10, at 2.  Indeed, the conduct that Fred alleges, if true, has caused Fred, his defense investigator, and the Court expense and inconvenience.

The questions that Fred's motion raises are not without precedent in the Tenth Circuit.  In

United States v. Pinto, the Tenth Circuit considered a case in which a prosecution witness refused to speak with the defendant's investigator, and told the investigator that the United States Attorney's Office had instructed her that she had the right to speak or not to speak with anyone from the defense.  See 755 F.2d at 152.  The investigator stated in an affidavit that the witness had made a telephone call to the United State's Attorney's Office while he attempted to meet with her at the witness' home, and that a secretary at the office instructed her not to speak to anyone from the defense.  See id.  At trial, the witness testified that she could not remember what the secretary told her during the telephone call.  See id.  In affirming, without analysis, the district court's denial of the defense's pre-trial motion to depose the witness, the Tenth Circuit concluded that "[i]n the case at bar the prosecution did not impermissibly interfere with [the witness'] choice."  Id.

The Tenth Circuit reached a different conclusion in United States v. Carrigan, when it found that "extraordinary circumstances" justified the district court's decision to order the deposition of government witnesses.  804 F.2d 604.  In United States v. Carrigan, there was evidence that witnesses had originally intended to meet with defense counsel, and then changed their mind after speaking with government representatives.  See id.  The witnesses at issue in United States v. Carrigan were originally potential co-defendants, and decided not to meet with the defense after they were granted immunity and the government offered to provide the defense with a copy of their statements.  See id.  In affirming the district court's decision to order depositions, the Tenth Circuit noted that the district court had made findings of fact that "government prosecutors 'by words, implications or non-verbal conduct of the prosecutor, either intended or unintended[,]' informed the witnesses that the government did not want them to talk to the defense, and 'substantially chilled' their prior willingness to do so."  Id.  In particular, the district court expressly relied on the testimony

of the defense's investigator, who testified that the witnesses told him "that government representatives told each of them they could not or should not talk with defense representatives." Id.

In light of these precedents, the Court finds that Fred has not shown good cause for defense interviews of Natisha and of her guardians. The Court will not authorize the interviews, because the Court is not convinced that Mahoney said what Fred accuses him of saying. At the hearing on this motion, Mahoney denied under oath making the statements Fred alleges, and the Court finds his testimony credible. In addition, the testimony of Fred's investigator, Rodriguez, was not inconsistent with Mahoney's testimony. Rodriguez did not testify that Hubbell told him that Mahoney had instructed her not to talk to defense representatives. Rather, Rodriguez repeatedly testified that Hubbell merely stated that she had to "clear it" with Mahoney before she allowed him to talk to Natisha. The Court does not believe that, in light of Natisha's age and the charges in this case, that was an unusual or unreasonable request.

Consistent with that finding, Fred has not presented evidence that the prosecution has "informed the witnesses that the government did not want them to talk to the defense," or that actions taken by Mahoney, the United States Attorney's Office, or any other government representative "substantially chilled" the witnesses pre-existing willingness to do so. To the contrary, considering the nature of the charges in this case, the Court believes it very likely that Natisha and her guardians were unwilling to speak to defense representatives of their own accord.

Witnesses maintain the right to refuse being interviewed, and Fred's rights are not violated because witnesses that the government intends to call at trial have freely chosen not speak to him. The Court will not order the witnesses to submit to interviews with Fred's counsel or investigator.

Finally, the Court, as requested, has carefully and thoroughly considered the other alternatives that Fred suggested, and will not grant him this relief.  While the rights to a fair trial are precious, and the Court is zealous to protect them, the Court does not believe that any of these options are needed to preserve Fred's rights.  Fred is on notice of what the charges are in this case, who the witnesses will be, and has been provided with the FBI 302 forms that outline the substantive conduct that constitutes the basis of the charges against him.  Moreover, the witnesses are not strangers to Fred, and the content of their testimony is unlikely to be surprising to him.  It is in the interest of justice that the parties be allowed to testify and that the case proceed to trial as scheduled on December 4, 2006.

**IT IS ORDERED** that the Defendant's Motion to Compel Defense Interview of Witnesses is denied.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Kyle T. Nayback
   Assistant United States Attorney
Albuquerque, New Mexico

        *Attorney for the Plaintiff*

John F. Moon Samore
Albuquerque, New Mexico

        *Attorney for the Defendant*