# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                     No. CR 05-801 JB

ERNEST FRED,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Formal Objections to the Pre-Sentence Report and Sentencing Memorandum, filed August 17, 2007 (Doc. 159)("Sentencing Memorandum"). The Court held a sentencing hearing on September 28, 2007. The primary issues are: (i) whether Fred should receive credit for all the time that he has been in custody; (ii) whether paragraphs 7 through 9 of the Presentence Investigation Report ("PSR") need to further acknowledge the unreliable circumstances of victim Natisha Fred's interviews; (iii) whether the PSR properly indicates, in paragraph 20, that Fred did not appear at a hearing on the Navajo Nation on legal custody for good cause because he was specifically ordered not to appear; (iv) whether the allegations made by Judge Heston and Rochelle Collins, Natisha's guardians, are empty allegations and inappropriately included in the PSR; (v) whether the PSR does not acknowledge the unreliable circumstances of Fred's statement; (vi) whether the portions of paragraph 28 of the PSR should be deleted because the paragraph includes no reference to documentation and contains only Natisha's representations; (vii) whether paragraphs 34 through 48 of the PSR are duplicative and whether the PSR should be revised to delete the duplicative paragraphs; (viii) whether the PSR recognizes the

unstable history of the victim's mother; (ix) whether paragraph 39 of the PSR wrongfully states that

Fred was convicted of kidnaping; (x) whether the addition of five points to Fred's criminal history

score in paragraph 56 of the PSR is unduly harsh; (xi) whether the assignment of two additional

points for obstruction of justice under paragraph 47 of the PSR is warranted; (xii)  whether Fred's

adjusted offense level should be, at the most, 31; and (xiii) whether the two-level enhancement for

custody, care and, control was properly assessed.  The Court will overrule all of Fred's objections

for the reasons stated herein, and will sentence Fred, at the low-end of the Guideline range, to 292

months incarceration.

## PROCEDURAL BACKGROUND

On May 8, 2007, the United States Probation Office ("USPO") disclosed its Presentence

Investigation Report.  See PSR, disclosed May 8, 2007.  On the face sheet of the PSR, the Date of

Arrest is listed as April 13, 2005.  See PSR at 1. The face sheet also describes Fred's custodial

status:

> On April 15, 2002, the defendant was released on bond under pretrial supervision to
> the La Pasada Halfway House in Albuquerque, New Mexico.  On August 23, 2005,
> the defendant's conditions of release were modified to allow him to be released to
> the third party custody of his common law wife Barbara McClanahan.   On
> September 22, 2006, the defendant's conditions were modified to have the defendant
> placed on electronic monitoring.  December 6, 2006, defendant found guilty and
> remanded (88 total days federal custody).

Id.  The face sheet does not list any detainers.  See id.

On August 17, 2007, Fred filed his Formal Objections to the Pre-Sentence Report and

Sentencing Memorandum.  See  Sentencing Memorandum.  Fred makes the following objections:

(i) that Fred should receive credit for all the time that he has been in custody; (ii) that paragraphs

7 through 9 of the PSR do not acknowledge the unreliable circumstances surrounding the interviews

of Natisha Fred; (iii) that paragraph 20 of the PSR does not properly indicate that Fred did not

appear at a hearing on the Navajo Nation on legal custody for good cause because he was specifically ordered not to appear; (iv) that the allegations made by Heston and Collins are empty allegations and inappropriately included in the PSR; (v) that the PSR does not acknowledge the unreliable circumstances of Fred's statement; (vi) that portions of paragraph 28 of the PSR should be deleted because the paragraph includes no reference to documentation and contains only Natisha's representations; (vii) that paragraphs 34 through 48 of the PSR are duplicative and that the PSR should be revised to delete the duplicative paragraphs; (viii) that the PSR does not recognize the unstable history of the victim's mother; (ix) that paragraph 39 of the PSR wrongfully states that Fred was convicted of kidnaping; (x) that the addition of five points to Fred's criminal history score in paragraph 56 of the PSR is unduly harsh; (xi) that the assignment of two additional points for obstruction of justice under paragraph 47 of the PSR is not warranted; (xii)  that Fred's adjusted offense level should be, at the most, 31; and (xiii) that the two-level enhancement for custody, care, and control was improperly assessed.  See Sentencing Memorandum at 1-5.  Fred also argues that, under United States v. Booker, 125 S.Ct. 738 (2005), the Court has authority to sentence him to a lesser term than the term indicated in the PSR.  See Transcript of Hearing ("Tr.") at 40:19-24 (taken September 28, 2007)(Samore).[1]

On September 17, 2007, the USPO disclosed an addendum to the PSR addressing all of Fred's objections.  See PSR, Addendum at 1-5, disclosed September, 17, 2007 ("Addendum").  The United States has not filed any objections to the PSR.

## LAW REGARDING RELEVANT SENTENCING GUIDELINES

While the Supreme Court in United States v. Booker made the sentencing Guideline range

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

advisory, the sentencing court's first task remains to accurately determine the Guideline sentence. Only after the court correctly determines the Guideline sentence can the court determine whether a variance from the Guideline sentence is appropriate.  In this case, Fred objects to how the advisory Guideline sentence was calculated and asks for a variance from the advisory Guideline range.

    1.    **Burden of Proof.**

There can be no dispute, after United States v. Booker, that the Sentencing Guidelines are now advisory.  See id. at 756 (excising the portion of the Sentencing Guidelines that made it mandatory and thus "mak[ing] the Guidelines effectively advisory");  United States v. Delacruz-Soto, 414 F.3d 1158, 1167 (10th Cir. 2005)(explaining that "Booker rendered [the Sentencing Guidelines] merely advisory").  It is up to the United States to establish facts necessary for an upward adjustment. See United States v. Rutter, 897 F.2d 1558, 1560 (10th Cir. 1990)("We recently decided that the quantum of proof required for factual determinations under the Sentencing Guidelines is a preponderance of the evidence and the burden of proof generally is allocated to the government for sentence increases and to the defendant for sentence decreases.")(citation omitted).

    2.    **18 U.S.C. § 3585(b)(2).**

18 U.S.C. § 3585(b)(2) provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences, as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

18 U.S.C. § 3585(b)(2). "[A] sentencing court is without jurisdiction to award credit under § 3585(b) for time served in prior custody at sentencing. Rather, the authority resides with the Attorney General, as exercised by the federal Bureau of Prisons." United States v. Brown, 212 Fed. Appx. 747, 755 (10th Cir. 2007)(internal citation omitted)(citing United States v. Jenkins, 38 F.3d 1143,

1144 (10th Cir. 1994)). "The Bureau of Prisons, as opposed to the district courts, is authorized to compute sentence credit awards after sentencing. As a result, a federal prisoner dissatisfied with computation of his sentence must pursue the administrative remedy available through the federal prison system before seeking judicial review of his sentence." United States v. Luna-Mora, 180 Fed. Appx. 847, 849 (11th Cir. 2006)(internal quotations and citations omitted).

The Supreme Court of the United States held in United States v. Wilson, 503 U.S. 329 (1992), that § 3585(b) does not authorize a district court to compute a sentence credit at sentencing for time served in pretrial detention. See id. at 331-32. Rather, credit awards must be made by the Attorney General, through the Bureau of Prisons, after sentencing. "In so holding, the [Supreme] Court recognized that under § 3585(b), Congress has indicated that computation of the credit must occur after the defendant begins his sentence. A district court, therefore, cannot apply § 3585(b) at sentencing." United States v. Jenkins, 38 F.3d at 1144 (internal quotations, citations, and alterations omitted).

### 3.    U.S.S.G. § 4B1.5.

U.S.S.G. § 4B1.5(2)(b) states:

(b) In any case in which the defendant's instant offense of conviction is a covered sex crime, neither § 4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct:

(1) The offense level shall be 5 plus the offense level determined under Chapters Two and Three. However, if the resulting offense level is less than level 22, the offense level shall be level 22, decreased by the number of levels corresponding to any applicable adjustment from § 3E1.1.

(2) The criminal history category shall be the criminal history category determined under Chapter Four, Part A.

Id.

4.      **Obstruction of Justice**.

U.S.S.G. § 3C1.1 states:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or
> impede, the administration of justice with respect to the investigation, prosecution,
> or sentencing of the instant offense of conviction, and (B) the obstructive conduct
> related to (i) the defendant's offense of conviction and any relevant conduct; or (ii)
> a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.  The Guidelines instruct that the enhancement for obstruction of justice "is not

intended to punish a defendant for the exercise of a constitutional right."  U.S.S.G. § 3C1.1 cmt. n.2.

When considering allegedly false testimony, the court should be "cognizant that inaccurate

testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus,

not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice."

Id.

5.      **U.S.S.G. § 2A3.1**.

U.S.S.G. § 2A3.1(b)(3) states: "(3) If the victim was (A) in the custody, care, or supervisory

control of the defendant; or (B) a person held in the custody of a correctional facility, increase by

2 levels." U.S.S.G. § 2A3.1(b)(3).  Application note 2 of U.S.S.G. § 2A3.1(b)(3) states:

> (A) Care, Custody, or Supervisory Control.--Subsection (b)(3) is to be construed
> broadly and includes offenses involving a victim less than 18 years of age entrusted
> to the defendant, whether temporarily or permanently. For example, teachers, day
> care providers, baby-sitters, or other temporary caretakers are among those who
> would be subject to this enhancement. In determining whether to apply this
> enhancement, the court should look to the actual relationship that existed between
> the defendant and the minor and not simply to the legal status of the defendant-minor
> relationship.

Id.  In United States v. Miller, 293 F.3d 468 (8th Cir. 2002), the United States Court of Appeals for

the Eighth Circuit held that § 2A3.5(b)(3)'s enhancement applied because the defendant was the

victim's "Dad" -- the defendant lived with the victim's mother as husband and wife, the victim

-6-

referred to the defendant as "Dad," and the defendant referred to the victim as his "child." 293 F.3d at 471-72. In <u>United States v. Sandoval</u>, No. CR 04-2362 (D.N.M.)(Browning, J.) the Court stated: "The Court believes, based upon <u>United States v. Miller</u>, that § 2A3.1(b)(3)(A) takes parents as a starting point for evaluating who is in custody, care, and control of the victim, and that it does not require that parents have any additional entrustment." <u>United States v. Sandoval</u>, Memorandum Opinion and Order at 27-28, No. CR 04-2362 (filed January 22, 2007)(Doc. 182)(internal quotations and citations omitted). In <u>United States v. Sandoval</u>, the Court found that, because the victim was Sandoval's biological daughter, with whom he shared permanent residency, and whom he financially supported, the 2-level enhancement was appropriate. <u>See</u> <u>id.</u>

## ANALYSIS

Fred raises a number of objections to the PSR. By the time of the sentencing, some were moot, and the Court overruled the remaining objections. The Court also denies Fred's request for a variance from the advisory Guideline sentence.

## I.    THE COURT WILL OVERRULE FRED'S OBJECTIONS.

Fred raises many objections to the PSR. The USPO has addressed some of them, thus mooting them before the sentencing hearing. The court will overrule the remainder of the objections.

### 1.    Credit for Time Served.

Fred objects to the face sheet of the PSR and asserts that he should receive credit for time in custody since December 6, 2006. <u>See</u> Sentencing Memorandum ¶ 1, at 1. The PSR reflects, however, an arrest date of April 13, 2005. <u>See</u> PSR, at 1. Fred does not dispute that the date of arrest is correct. There is also no dispute that he has been in custody since December 6, 2006.

The Bureau of Prisons is the agency tasked with giving credit for any time spent in official

detention. See United States v. Brown, 212 Fed. Appx. at 755. Thus, the Court has no power -- at this sentencing -- to assure that Fred receives credit for all the time he has been in custody since December 6, 2006. See id. The Court believes that the information on the face sheet of the PSR is accurately stated, and the Court will thus overrule Fred's objection to the face sheet.

**2.    Natisha's Interviews.**

Fred contends that paragraphs 7 through 9 of the PSR do not acknowledge the unreliable circumstances of Natisha's interviews. See Sentencing Memorandum ¶ 4 at, 1-2. Fred contends that all of Natisha's allegations arose out of a single interview which followed her capture in one of her runaway incidents. See id. The interview was not recorded by video or audio, and was not conducted in a designated Safe House or under verifiable procedures; the participants in the interview refused to be interviewed by the defense; the defense was denied an interview of the prosecutrix; and, according to Fred, the prosecutrix had an extensive, uncontradicted history of running away from home and school, of lying, and of illegal drug use. See id. ¶ 4, at 2. Fred further asserts that the PSR fails to fully recognize Fred's clean criminal record, his devoted commitment to his children, and the uncontradicted trial testimony from school representatives of his conscientious work to try to help his daughter resolve her personal problems. See id.

Fred attempts to explain why this concern is important by stating that the offense level enhancements that he faces in this case are severe. See Sentencing Memorandum at 2. Fred argues that the United States' burden is not resolved by a guilty verdict, and that the sentencing court must make an independent determination whether Natisha's statements support the sentencing increases that the United States requests. See id.

Fred contends that Natisha's statements appear to be inherently unreliable. See id. Fred maintains that sufficient punishment has already been recommended for Fred with the guilty verdict

and with a sentence at the minimum offense level. See id.  He argues that it is unnecessary to have the Court's independent enhancement of the offense level at a sentencing that merely reaffirms the jury's findings.  See id.

Administratively, what the USPO in the District of New Mexico does, in the offense-conduct section of the PSR, is attempt to place therein all of the pertinent information regarding the offense to assist the Court in understanding the offense's facts and the elements relevant to the application of the sentencing Guidelines.  The victim's version of the sexual assault is necessary for the Court to gain a clear picture of what occurred during these offenses.  The victim's version and the statement of the offenses are relevant and necessary for the Court's information.

The Court believes that it has the authority to consider all relevant information, including the interview of the victim as laid out in paragraphs 7, 8 and 9 of the PSR.  The Court will, however, take Fred's observations and arguments into account when it considers the other issues before it. Furthermore, the USPO has placed Fred's objection -- that the PSR does not acknowledge the unreliable circumstances of Natisha's interview -- into its Addendum for the Court's consideration, and for further review by the Tenth Circuit and by the Bureau of Prisons.  See Addendum at 4. Accordingly, the Court will overrule Fred's objection to paragraphs 7, 8, and 9.

### 3.  Paragraph 20 of the PSR.

The PSR reflects that the Navajo Nation had a legal custody hearing for the victim and her guardians, Collins and Heston.  See PSR ¶ 20, at 7. The guardians appeared, but Fred did not. See id.  Fred objects to paragraph 20 of the PSR, which indicates that Fred did not appear for Natisha's custody hearing in Tribal Court of the Navajo Nation.  See Sentencing Memorandum ¶ 7, at 3.

Fred maintains that he did not appear at the hearing on the Navajo Nation on legal custody for good cause.  See id.  The trial record confirms that, because of the allegations in this case, he was

specifically ordered to stay away from Natisha.  See id. He interpreted this restriction as prohibiting him from attending the hearing, and thus did not attend.  See id.; PSR ¶ 20, at 7.

The Addendum notes that Fred's conditions of pretrial release prohibited him from having any contact with the victim. See Addendum at 3. The USPO has corrected the PSR to indicate that Fred respected the pretrial restriction.  See PSR ¶ 20, at 7.  The Court will thus overrule the objection as moot.  At the sentencing hearing, Fred's counsel stated that he agreed with the Court's decision to overrule the objection and requested that it be noted that the objection was moot.  See Tr. at 7:25-8:3 (Samore).

### 4.    Paragraph 21 of the PSR.

Fred objects to paragraph 21, in which Heston and Collins provide their assessment of Natisha.  See Sentencing Memorandum ¶ 8, at 3.  Fred argues that there is no support for the allegations made therein and that, absent reasonable documentation or availability for examination, the relevant portions should be struck from the PSR.  See id.

In response to Fred's objection, the USPO provided specific information regarding  Fred's concern.  See Addendum at 3.  The USPO states that it interviewed the Assistant United States Attorney who provided it with the relevant information.  See id.  The Assistant United States Attorney received this information from the case agent.  See id. The case agent received this information from the guardians' assessment of the victim.  See id.  The USPO also notes that it is required to provide the Court with a victim or her guardians' account of the offenses.  See id. Furthermore, the USPO states that the guardians were interviewed, and that those conversations with the guardians were thus part of the USPO's  investigation and were included in the PSR because they are relevant.  See id.

The Court believes that the information from the guardians is relevant.  Given the nature of

the information, however, the Court may decide to consider it with some caution. The Court will carefully consider the weight of this evidence when considering the enhancements or any request for a variance. Nevertheless, the USPO properly included this information in the PSR. Accordingly, the Court will overrule the objection to paragraph 21. At the sentencing hearing, Fred's counsel stated that the Court's ruling on this objection appeared substantively fair. See Tr. at 8:24-25 (Samore).

**5.    Paragraph 23 of the PSR.**

Fred objects to paragraph 23, which describes his statement to the FBI. See Sentencing Memorandum ¶ 9, at 3. Fred contends that the PSR does not acknowledge the many unreliable circumstances of his statement, including that it was unrecorded in any way; that every word was written by a "college-educated white man in the presence of another college-educated white man, both of whom were visibly armed with weapons;" that Fred was isolated from his wife; and that he is unsophisticated, functionally uneducated, and illiterate in English legal terms. Id.

The USPO placed Fred's concerns about paragraph 23 in its Addendum to the PSR by quoting Fred's language from his Sentencing Memorandum. See Addendum at 3-4. Thus, because Fred's concern is specifically included in the Addendum to the PSR, the Court will overrule Fred's objection as moot. Fred's counsel agreed that the Court's decision was fair. See Tr. at 11:12 (Samore).

**6.    Paragraph 28 of the PSR.**

Fred objects to paragraph 28 of the PSR, which includes an interview with Natisha. Fred contends paragraph 28 references no documentation and only contains Natisha's representations. See Sentencing Memorandum ¶ 10, at 4. Fred argues that the Court should delete paragraph 28. See id.

While the Court understands Fred's arguments regarding paragraph 28, it believes that it does have to consider the victim's statements, because the law gives her a right to be reasonably heard.  The Court believes that it is appropriate to include paragraph 28 in the PSR to reflect her statement.  Thus, the Court will overrule the objection to paragraph 28, but will consider any arguments Fred has about the weight that the Court should give to the victim's statements.

**7.      Paragraphs 34 through 48 of the PSR.**

Fred argues that paragraphs 34 through 48, regarding Specific Offense Characteristics and Base Offense Level, are duplicative and confusing and, thus, some of the paragraphs should be deleted from the PSR.  See Sentencing Memorandum ¶ 3, at 1.  While the Court believes that there are some redundancies in those paragraphs, it believes that such redundancies are appropriate, because Fred's case involves two counts.  Furthermore, the Court does not believe that the PSR is confusing.  Thus, the Court believes that the Probation Officer proceeded appropriately in setting out its calculations on the two separate counts and will overrule the objection.  At the sentencing hearing Fred's counsel stated: "I can also see the Court's point that if [the Probation Officer] had been less red[undant] then he might have gotten an[] objection for not providing sufficient detail.  So I think it's . . . understandable in this case and we're sure that this will not prejudice the Court . . . in its final ruling . . . so that is fair." Tr. at 12:22-13:3 (Samore).

**8.      Natisha's Mother.**

Fred objects that the PSR does not recognize the unstable history of the prosecutrix' mother, Claudia Platero, which relates to Natisha and his other childrens' emotional problems that arose when the children were exclusively with Platero.  See Sentencing Memorandum ¶ 5, at 2-3.  Fred contends that two of Natisha's older brothers are in prison on separate murder convictions, see id.; PSR ¶ 70, at 16; that one has wrestled with emotional demons all of his life; and that Natisha has

-12-

made false allegations against her father.  See Sentencing Memorandum ¶ 5, at 3.

The Court believes that the PSR acknowledges the unstable history of the victim's mother. The PSR indicates that Platero left Fred in 1988.  See PSR ¶ 72, at 16-17.  She took the children, left town, and provided no forwarding address or contact information. See id.  Fred did not have contact with Platero or the children for approximately four years.  See id.

Furthermore, the PSR indicates that, in 1993, Fred received information that the children and Platero were living in abandoned cars and inexpensive motels in the Phoenix, Arizona area.  See id. ¶ 72, at 17.  The PSR states that, while Fred was preparing to travel to find Platero and their children, he learned that the children were visiting Platero's mother in Gallup, New Mexico.  See id.  At that time, Fred was able to locate Platero and the children, and subsequently acquired full legal custody of the children from tribal court.  See id.

While the USPO does not characterize Platero, the information in the PSR allows the Court to draw its own conclusions about the unstable history of the victim's mother.  The addendum also sets forth Fred's concerns about her unstable history.  See Addendum at 2-3.  The Court will consider this information when it rules on the enhancements.  The Court will overrule Fred's objection to the PSR.  In response to the Court expressing its inclination to overrule Fred's objection, Fred's counsel stated that the Court's ruling "seems fair with the Court's explanation." Tr. at  14:2-5 (Samore).

**9.     Paragraph 39 of the PSR.**

Fred objects to paragraph 39 of the PSR, which indicates that Fred was convicted of kidnaping. See Sentencing Memorandum ¶ 6, at 3; PSR ¶ 39, at 11.  Fred was not convicted of kidnaping.  In response to Fred's objection to paragraph 39, the USPO, on July 27, 2007, disclosed to all parties a revised page deleting the kidnaping reference.  See Addendum at 3.  The Court will

thus overrule this objection as moot.

      10.     **Paragraph 56 of the PSR.**

Fred argues that, despite the jury finding, the Court needs to be cautious in inferring a pattern of conduct from the two offenses of conviction.  See Sentencing Memorandum ¶ 11, at 4; PSR ¶ 56, at 13; U.S.S.G. §4B1(b)(1).  Fred contends that the inclusion of an additional 5 points is unduly harsh and cruelly extends his punishment.  See Sentencing Memorandum ¶ 11, at 4. Fred also contends that, because the Sentencing Guidelines are discretionary, the Court has full discretion to decline to add these points.  See id.  Fred argues that, for other reasons cited in his sentencing memorandum, he is entitled to a variance from any presumption that the Guidelines have regarding "pattern of activity."  U.S.S.G. §4B1.5(b)(1).

At the sentencing hearing, Fred's counsel argued that, when the Court looks at all the evidence, there is not a preponderance of the evidence authorizing the Court to add this 5-point enhancement.  See Tr. at 18:8-13 (Samore).  During the hearing, Fred's counsel read a letter from the victim to her brother.  See Tr. at 21:12-18 (Samore).  Fred's counsel asked the Court to consider the letter when exercising its discretion in determining an appropriate sentence for Fred.  See Tr. at 22:4-8 (Samore).

The Court believes that the verdicts that were returned by the jury are supported by the evidence.  The Court believes that the United States has shown, through trial, that those convictions are supported by evidence which a reasonable jury can find beyond a reasonable doubt.  This Court also finds these verdicts by a preponderance of the evidence.

U.S.S.G. § 4B1.5 deals with repeat and dangerous sex offenders who commit crimes against minors.  U.S.S.G. § 4B1.5(b) allows for a 5-level enhancement in certain circumstances in which "the defendant engaged in a pattern of activity involving prohibited sexual conduct."  Id.  The

commentary for section (b) of U.S.S.G. § 4B1.5 states: "For purposes of subsection (b), the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." Id., app. n.4. Thus, given the convictions and the evidence before the Court at trial, the Court believes that the enhancement is appropriate.

The Court notes that the United States Court of Appeals for the Tenth Circuit allowed a 5-level enhancement under U.S.S.G. § 4B1.5 in  United States v. Riccardi, 405 F.3d 852, 874 (10th Cir. 2005).  The Tenth Circuit stated:  "[I]t is clear from the verdict that the jury found Mr. Riccardi guilty of engaging in prohibited sexual conduct on at least two occasions with at least two victims, satisfying the requirements of U.S.S.G. § 4B1.5(1)." Id. at 874, n.9.  The United States Court of Appeals for the Fourth Circuit in United States v. Schellenberger, 246 Fed.Appx. 830 (4th Cir. 2007), affirmed the district court's two separate 5-level increases for engaging in a pattern of activity involving the abuse or exploitation of a minor. Id.  at 832.  While the defendant contended that the same course of conduct netted two increases for the same reason, the Fourth Circuit held that the double counting was permitted because the Guidelines did not expressly prohibited the counting.  See id.

U.S.S.G. § 4B1.5  applies when the conduct falls within the definition of the Guideline, thus the 5-level enhancement in  U.S.S.G. § 4B1.5 is to be added to the offense level under chapters two and three when the conduct fits within the Guideline.  See id.  The Court believes that there is some cumulative nature to what the Guidelines do, and that Congress intends the Guidelines to be cumulative for sex crimes against minor victims.  The Court will not, therefore, decline to add the 5-level enhancement.  The Court overrules the objection, but will allow Fred to further argue that the Court should consider these same factors when it decides whether to vary under United States

v. Booker.

**11.    Obstruction of Justice.**

Fred argues that to award an additional 2-points for obstruction of justice, because he exercised his right to testify at trial, is highly objectionable.  See Sentencing Memorandum ¶ 12, at 4-5.  Fred's counsel contends that just because "this simple, unsophisticated native was not believed does not make his testimony false." Id. at 5.  Fred argues that the 2-level increase is not warranted. See id.

Fred pointed out to the Court that he has language limitations, and that he often misunderstands common words.  See Tr. at 30:11-15 (Samore).  At the sentencing hearing, Fred's counsel stated "my client testified, testified honestly."  Tr. at 29:24-25 (Samore).  Furthermore, Fred's counsel argued that the mere fact that Fred was found guilty does not mean that he obstructed justice.  See Tr. at 30:8-10 (Samore).

The United States argued that Fred chose, after talking it over with his lawyer, to testify and deny the sexual acts with which he was charged, and that the jury did not believe him.  See Tr. at 32:18-21 (Nayback).  The United States stated: "To that extent, he obstructed justice.  He was attempting to avoid responsibility by telling stories and telling lies on the witness stand under oath in this courtroom." Tr. at 32:21-23 (Nayback).

The Court does not believe that an enhancement for an  obstruction of justice is intended to punish a defendant for the exercise of a constitutional right.  The Court strongly believes that a defendant should have the chance to get on the stand and explain his case without running the risk of being punished for that activity.  The comments to U.S.S.G. § 3C1.1 state: "[T]he court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful

attempt to obstruct justice." Id., app. n. 2.

To determine whether Fred's testimony amounts to obstruction of justice, the Court looks at the issue from a number of angles, particularly looking to see if the jury, and the Court, could believe the testimony of Fred and still find him guilty beyond a reasonable doubt. The Court also looks to see if there are any inconsistencies that can be explained and whether the jury took those into account. The Court has reviewed the testimony of Agent Mahoney regarding Fred's written statement along with Fred's testimony, and believes that the jury could not have found Fred guilty beyond a reasonable doubt had they believed anything Fred said. The Court, like the jury, has come to the conclusion that Fred's testimony, particularly given his past statements, was untrue. Thus, the Court believes that the United States met its burden to show, by a preponderance of the evidence, that Fred deliberately made false and intentionally misleading statements in his trial testimony, and thus that he obstructed justice.

The Court notes that Fred's situation is distinguishable from the situation in United States v. Zuni.  See United States v. Zuni, No. CR 05-2369 JB, Memorandum Opinion and Order (D.N.M., filed March 5, 2007)(Browning, J.)(Doc. 111).  In United States v. Zuni, the incident involved in the trial testimony occurred during a very emotional time for both Zuni and for the victim, and, thus, it was possible that Zuni's testimony was based on his own recollection of some very detailed events and that there could be a difference of memories between Zuni and the victim. See id. at *36-37. In United States v. Zuni, the Court found that the circumstances did not necessarily indicate an obstruction of justice. See id. at 37.  The Court believes that Fred's case is different; the discrepancy between the victim's version of events, Fred's statement to the FBI, the jury's finding, and Fred's trial testimony, cannot be explained away as could the circumstances in United States v. Zuni.  The Court finds, therefore, that the United States has met its burden of showing, by a preponderance of

the evidence, that Fred obstructed justice in this case.  Thus, Fred's objection is overruled.

**12.**     **Adjusted Offense Level.**

Fred argues that his adjusted offense level, as indicated in paragraph 48 of the PSR, should be, at most, 31, as opposed to 33.  <u>See</u> Sentencing Memorandum ¶ 13, at 5.  The Court has determined, however, that the Probation Officer has accurately calculated the adjusted offense level and the Guideline sentence.  The Court will thus overrule Fred's objection.

**13.**     **Custody and Care.**

At the sentencing hearing, Fred's counsel also raised the issue whether the 2-point enhancement under paragraph 36 was appropriate.  <u>See</u> Tr. at 38:16-25 (Court & Samore). Paragraph 36 awards a 2-level enhancement pursuant to U.S.S.G. § 2A3.1(b)(2) because the victim was in the custody, care, or supervisory control of Fred during these offenses.  <u>See</u> PSR ¶ 36, at 10. There is a similar enhancement in paragraph 44 of the PSR for Count 2.  <u>See</u> PSR ¶ 44, at 12.

Regarding this Guideline application, the victim was at Fred's home during the two offenses for which he was convicted.  <u>See</u> PSR ¶¶ 36, 44 at 10, 12.  The victim, who is Fred's biological daughter, was in Fred's custody and care.  <u>See</u> <u>id.</u>  Fred had an obligation to care for and provide a safe environment for his daughter.  <u>See</u> <u>id.</u>  From what the Court can tell, Fred and his daughter shared a permanent residence, and Fred financially supported his daughter.  It also appears that the victim referred to Fred as her father and that he considered her his child.  The Court believes that the facts present in this case support that the victim was in the custody and care of Fred.  The Court believes that  parents are not required to have any additional entrustment to have custody and care of their child.  Because the Guidelines require that each adjustment be separately addressed, two separate 2-level increases in Fred's criminal history score should be awarded. Thus, the USPO appropriately applied and calculated each specific offense characteristic.  The Court will overrule

this objection.

## II.    THE COURT WILL IMPOSE A SENTENCE AT THE LOW END OF THE ADVISORY GUIDELINE RANGE.

The Court has very carefully considered the arguments in the sentencing memorandum as well as those made during the sentencing hearing.  The Court also takes into consideration all the additional information that it received during the trial and through the course of those proceedings.  The Court has also considered the factors set forth in 18 U.S.C. § 3553(a) and has considered whether the sentence is reasonable.  Fred's Guideline offense level is 40 and his criminal history category is I.  The Guideline sentencing range for Fred is 292 to 365 months.

The Court has considered the Guidelines as well as other sentencing goals.  Specifically, the Court has considered the Guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant.  The Court believes that, after working through the Guidelines and, ruling on the enhancements, and after reviewing the testimony and how those enhancements were determined, the punishment that is set forth in the Guidelines is appropriate for Fred's offenses.

The Court has also considered the kinds of sentences and ranges established by the Guidelines.  The Court believes that a sentence at the low end of the Guideline range reflects the seriousness of the offense.  The Court acknowledges that Congress has treated Fred's offenses very seriously and encourages courts to do the same.

The Court believes that a sentence at the low end of the Guideline range reflects Congress' concern and the seriousness of Fred's two counts.  The Court believes that a sentence at the low end of the range, of 292 months, promotes respect for the law and provides just punishment.  The Court has taken into account the impact that Fred's crimes have had on the victim, as well as on society,

and the Court believes that a sentence of 292 months affords adequate deterrence, protects the public and fully reflects each of the factors in 18 U.S.C. § 3553(a).  The Court is also going to recommend that Fred receive training and counseling in the Bureau of Prisons as well as while he is on supervised release, which will assist in promoting the factors in 18 U.S.C. § 3553(a).

Although this sentence is long and takes away a great deal of Fred's life, the Court believes that this sentence is reasonable given the seriousness of his crimes.  The Court believes that the sentence is sufficient, at the low end of the range, without being greater than is necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act.  The Court believes that Congress and the Guidelines have mandated the factors that the Court should consider, and that those are reflected in the advisory Guideline range.  The Court believes that the other factors in 3553(a) are also adequately and sufficiently reflected in the Guideline sentence.   Thus, Fred is sentenced to 292 months imprisonment.

**IT IS ORDERED** that the Defendant's Objections to the PSR in his Sentencing Memorandum are overruled.  The Court will not vary in Fred's case.  Fred is sentenced at the low end of the Guideline range to 292 months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
  United States Attorney for the
   District of New Mexico
Kyle T. Nayback
  Assistant United States Attorney for the
   District of New Mexico
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

John F. Moon Samore
Albuquerque, New Mexico

      *Attorney for the Defendant*